Filed 5/23/14  P. v. Hawkins CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDRE HAWKINS,<br><br>        Defendant and Appellant. | A135075<br><br>(San Francisco County<br>Super. Ct. No. 212064) |

Defendant Andre Hawkins appeals a judgment entered upon a jury verdict finding him guilty of felony grand theft (Pen. Code,[1] § 487, subd. (c)) (count one), theft from an elder or dependent person (§ 368, subd. (d)) (count two), and resisting arrest (§ 148, subd. (a)(1)) (count four).  The jury also found true seven prior conviction and prison term allegations, including five "strike" convictions:  separate convictions for second degree robbery (§§ 211, 212.5, subd. (b)) in 1976, 1979, and 1991, and two convictions for lewd and lascivious acts with a minor under the age of 14 by means of force or fear in 1999 (§ 288, subd. (b)(1)).  (§§ 667, subds. (d) & (e), 667.5, subd. (b), 1170.12, subds. (b) & (c).)  He was sentenced under the Three Strikes law to imprisonment for 25 years to life.

On appeal, defendant contends the court erred in calculating his presentence conduct credits and the amount of his fines, that the length of his sentence violated his constitutional rights, and that the court abused its discretion in declining to dismiss some

---

[1] All undesignated statutory references are to the Penal Code.

1

or all of his prior convictions.  We shall modify the judgment to increase defendant's conduct credits and reduce his restitution fine, and otherwise affirm the judgment.

## I.  BACKGROUND

In 2009, the victim of the theft, then approximately 84 years old, withdrew $200 from a bank, put the money in her wallet, and returned to the basement parking lot where her car was parked.  She opened the door of her car and began to sit down, the wallet still in her hand.  Suddenly, she realized someone had taken her wallet from her hand.  She screamed, turned, and saw a man running toward the stairs.  She followed him.  At the bottom of the stairs, she looked up and saw a man she later identified as defendant.  The man had distinctive red hair, apparently dyed.  A bystander told her defendant then ran off.  The victim called 911 and reported the crime.

A police officer saw defendant on a Muni train and saw that he matched the description of the thief.  He stopped the train; defendant made eye contact with him and then left the train.  The officer identified himself and told defendant to stop.  Defendant said something like, "No, man, I'm not stopping."  The officer chased him and pinned him against the fence with the aid of other officers who had arrived.  When they caught him, his arms were making a throwing motion.  Defendant flailed his arms and tried to step away.  It took three officers to handcuff him.  A search revealed $207 on defendant's person, $200 of which was in denominations that matched those taken from the victim.  The victim's wallet was found a few feet away.

The trial court imposed a prison sentence of 25 years to life for count one in accordance with the Three Strikes law and a concurrent four-month sentence for count four, stayed the sentence on count two pursuant to section 654, and stayed the prior prison terms for purposes of sentencing.  At the February 1, 2012 sentencing hearing, the court granted 913 days of credit for actual time served, and limited conduct credits to 15 percent, or 136 days of conduct credit.  In doing so, the court stated that because defendant had suffered two prior serious felony convictions, he was not entitled to have his credits calculated pursuant to section 4019, which would offer more generous conduct

2

credits. The court imposed a restitution fine of $6,000 pursuant to section 1202.4, and a parole revocation fine of $5,000 pursuant to section 1202.45.

## II. DISCUSSION

### A. Conduct Credits

#### 1. Statutory Background

A criminal defendant is entitled to accrue presentence credits both for actual time served under section 2900.5 and conduct credits—or credits for good behavior and performing additional labor—under section 4019. (*People v. Dieck* (2009) 46 Cal.4th 934, 939 & fn. 3; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395 (*Kennedy*).) Defendant contends that (1) under principles of equal protection, the trial court should have calculated his presentence credits pursuant to an amendment to section 4019 that became effective in October 2011, and that (2) even under the earlier version of section 4019, he was entitled to additional custody credits. Moreover, in an argument made for the first time in his reply brief, defendant argues that under the terms of the most recent version of section 4019—as distinct from under principles of equal protection—he was entitled to the benefit of the amended statute for the time he served in custody after the effective date of the amendment.

Defendant committed his offenses in 2009. At that time, "conduct credits under Penal Code section 4019 could be accrued at the rate of two days for every four days of actual time served in presentence custody. (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f)].) Effective January 25, 2010, the Legislature amended Penal Code section 4019 in an extraordinary session to address the state's ongoing fiscal crisis. Among other things, Senate Bill No. 3X 18 (2009–2010 3d Ex. Sess.) amended section 4019 such that defendants could accrue custody credits at the rate of two days for every two days actually served, twice the rate as before except for those defendants required to register as sex offenders, those committed for serious felonies (as defined in § 1192.7), or those who had prior convictions for violent or serious felonies. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, §§ 50, 62 [Pen. Code, former § 4019, subds. (b), (c), & (f)].) [¶] Effective September 28, 2010, Penal Code section 4019 was amended again to restore

3

the presentence conduct credit calculation that had been in effect prior to the January 2010 amendments, eliminating one-for-one credits." (*Kennedy*, *supra*, 209 Cal.App.4th at p. 395.)

In 2011, in connection with the " '2011 Realignment Legislation addressing public safety' " (Stats. 2011, ch. 15, § 1), section 4019 was amended to restore one-for-one conduct credits. (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549 (*Ellis*); *Kennedy*, *supra*, 209 Cal.App.4th at pp. 395–396; § 4019, subds. (b), (c), & (f).) These increased credits are available regardless of whether a defendant—like defendant here—has been previously convicted of a serious or violent felony. (§ 4019.) Pursuant to an amendment to the realignment legislation (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 35, eff. Sept. 21, 2011, operative Oct. 1, 2011), subdivision (g) of section 4019 states: "The changes in this section as enacted by the act that added this subdivision shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after the effective date of the act." Subdivision (h) states: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

*2. Conduct Credits for Time Served After October 1, 2011*

Defendant contends he is entitled to one-for-one presentence conduct credits for the time he spent in custody after October 1, 2011, the effective date of the October amendments to section 4019.[2]

*Kennedy* explained that the Legislature made the 2011 amendment reinstating one-for-one conduct credits "applicable to crimes committed on or after October 1, 2011, the operative date of the amendments, expressing legislative intent for prospective

---

[2] Although defendant did not raise this issue in the trial court, we will consider it as it presents a pure question of law on undisputed facts. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 118; *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139 (*Aguirre*).)

4

application only." (*Kennedy*, *supra*, 209 Cal.App.4th at pp. 395–396.)  Thus, under this amendment, "if A commits a crime on September 30, 2011, and B commits a crime on October 2, 2011, A will receive a lower level of conduct credits than B, even if their time in custody begins on the same day, e.g., October 3, 2011, because A committed his crime before October 1, 2011, and B committed his crime 'on or after October 1, 2011.' (§ 4019, subd. (h), as amended by Stats. 2011, ch. 39, § 53.)" (*People v. Verba* (2012) 210 Cal.App.4th 991, 994 (*Verba*); see also *Ellis*, *supra*, 207 Cal.App.4th at p. 1553 ["[T]he Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011."].)

### a.  Statutory Construction

In his opening brief, defendant does not dispute this interpretation of section 4019; that is, he does not dispute that under the terms of the 2011 amendment to section 4019, one-for-one credits are unavailable to defendants who committed their crimes before October 1, 2011.  In his reply brief, however, he makes a new argument:  that the reference in section 4019, subdivision (h), to prospective application does not mean that defendants who committed their crimes before October 1,  2011 are not entitled to *any* of the benefits of the increased conduct credits, but rather that they are entitled to increased conduct credits *only* for the time they spent in custody after the effective date of the amendment.  According to defendant, the first sentence of subdivision (h) of section 4019 refers to two groups:  those who were already in custody as of October 1, 2011, and those who offended after that date; as to those already in custody, the conduct credit earned before October 1, 2011 should be calculated under the previous formulation, and the credit earned after that date should be calculated prospectively, that is, under the new formulation.

As a general matter, we do not consider arguments made for the first time in an appellant's reply brief unless good cause is shown for failure to present them earlier. (See *People v. Whitney* (2005) 129 Cal.App.4th 1287, 1298; *People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2; *People v. Speegle* (1997) 53 Cal.App.4th 1405, 1418, fn. 8.)  Defendant does not explain his failure to present this argument earlier, and the

5

claim is therefore forfeited. In any case, the published cases that have considered this question have unanimously concluded the enhanced conduct credits are available only to those defendants who committed their offenses on or after October 1, 2011, and we are not persuaded by defendant's argument that those cases were wrongly decided. (See *People v. Miles* (2013) 220 Cal.App.4th 432, 436; *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48–52 (*Rajanayagam*); *Kennedy*, *supra*, 209 Cal.App.4th at pp. 399–400; *Ellis*, *supra*, 207 Cal.App.4th at p. 1553; see also *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9 [October 2011 amendment "expressly applies only to prisoners who are confined to a local custodial facility '*for a crime committed on or after October 1, 2011.*' "; *People v. Brown* (2012) 54 Cal.4th 314, 322–323, fn. 11 (*Brown*) ["changes to presentence credits expressly 'apply *prospectively* . . . to prisoners who are confined to a county jail [or other local facility] *for a crime committed on or after October 1, 2011.*' "].)

### b. Equal Protection

Defendant contends he was deprived of his constitutional right to equal protection of the law when he was denied one-for-one conduct credit for the presentence time he served after October 1, 2011. Defendant argues that: (1) during the time after October 1, 2011, he was similarly situated to offenders who committed crimes after that date, but was treated differently; (2) this court should apply strict scrutiny to the disparate treatment because it affects his fundamental interest in personal liberty; and (3) there is no adequate ground for allowing otherwise identical offenders to serve prison terms of different lengths based on the dates on which they offended.

The cases considering this issue have uniformly rejected defendant's position. *Rajanayagam* is directly on point. The defendant there committed his crimes on August 20, 2011, and pled guilty on October 31, 2011. He contended the enhanced conduct credits of section 4019 should be applied to all of the time he served on or before October 1, 2011. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 46.) The Court of Appeal first concluded, as we have already discussed, that as a matter of statutory construction the enhanced credits applied only to those who committed their crimes on or before

6

October 1, 2011. (*Id*. at pp. 48–52.) The court went on to consider whether this result violated the defendant's right to equal protection of the law. The court explained: "The first prerequisite to a meritorious claim under the equal protection clause is a showing the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citations.] . . . If the first prerequisite is satisfied, we proceed to judicial scrutiny of the classification. Where, as here, the statutory distinction at issue neither touches upon fundamental interests nor is based on gender, there is no equal protection violation if the classification bears a rational relationship to a legitimate state purpose. [Citations.] Under the rational relationship test, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (*Id*. at p. 53.) The court concluded the two affected classes—"(1) those defendants who are in jail on and/or after October 1, 2011, who committed an offense on or after October 1, 2011, and (2) those defendants who are in jail on and/or after October 1, 2011, who committed the same offense *before* October 1, 2011"—were similarly situated for purposes of the October 2011 amendment to section 4019. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 53.)

The court then went on to note that, although the purpose of conduct credits in general is to provide inmates with incentives to work and behave, the October 2011 amendments to section 4012 were part of the Realignment Act, the purposes of which were " 'to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' " (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54–55.) The court then concluded the classification bore a rational relationship to cost savings; the court reasoned that "equal protection of the laws does not forbid statutes and statutory amendments to have a beginning and to discriminate between rights of an earlier and later time," (*id*. at p. 55) and that in choosing October 1, 2011 as the effective date of the amendment, "the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served

7

by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. [Citation.] Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam*, *supra*, 211 Cal.App.4th pp. 55–56; see also *Verba*, *supra*, 210 Cal.App.4th at p. 995 [increased conduct credits were part of larger measure designed to save the state money]; *Ellis*, *supra*, 207 Cal.App.4th at pp. 1549, 1551–1553 [no equal protection violation in denying enhanced conduct credits for any of the time a defendant spent in custody where defendant committed crime before October 1, 2011 and was sentenced on October 13, 2011].)[3]

---

[3] We reject defendant's argument that we must apply strict scrutiny to this classification. Defendant relies on *People v. Olivas* (1976) 17 Cal.3d 236, which applied strict scrutiny review to a statute that allowed misdemeanants between the ages of 16 and 21 to face a longer period of confinement if treated as a juvenile than if treated as an adult. Our Supreme Court has since made clear, however, that the reach of *Olivas* is not as broad as defendant suggests. Rather, "*Olivas* ' "requires only that the boundaries between the adult and juvenile criminal . . . systems be rigorously maintained" ' and does not require ' "the courts to subject all criminal classifications to strict scrutiny requiring the showing of a compelling state [interest] therefor." ' " (*People v. Ward* (2005) 36 Cal.4th 186, 218.) As our high court has explained, despite language in *Olivas* that "could be interpreted to require application of the strict scrutiny standard whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes, because such statutes always implicate the right to 'personal liberty' of the affected individuals, . . . *Olivas* properly has not been read so broadly." (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837; see also *People v. Turnage* (2012) 55 Cal.4th 62, 74 ["A criminal defendant has no vested interest ' "in a

8

*Kennedy* reached a similar conclusion. The defendant there committed his crime on March 11, 2011, was sentenced on November 17, 2011, and argued on appeal that he was entitled to enhanced conduct credits for all of the time he spent in custody before sentencing. (*Kennedy*, *supra*, 209 Cal.App.4th at p. 388.) The court first concluded that defendant was not similarly situated to defendants who committed their crimes before October 1, 2011, because the correctional purposes of conduct credits would not be served by "rewarding prisoners who served time before the incentives [for good behavior] took effect and thus could not have modified their behavior in response." (*Id.* at p. 397, citing *Brown*, *supra*, 54 Cal.4th at pp. 328–329.) The court went on to conclude that even if, during the time the defendant spent in custody after October 1, 2011, he was similarly situated to others who committed their crimes after that date, there was no equal protection violation: the classification was properly reviewed for a rational relationship to a legitimate state purpose, and such a relationship could be seen in a legislative goal to preserve the deterrent effect of the criminal law as it stood at the time the defendant committed his crimes. (*Kennedy*, *supra*, 209 Cal.App.4th at pp. 397–399.)

In light of this consistent authority, we reject defendant's argument that he was entitled to enhanced conduct credits under section 4019 for the time he spent in custody after October 1, 2011.

### 3. *Limitation of Credits to 15 Percent*

The trial court concluded defendant was not entitled to have his presentence credits calculated in accordance with section 4019 because he had suffered two prior serious felony convictions; the court therefore limited defendant's conduct credits to 15 percent of his actual time served. Defendant argues that his credits should not have been so limited, and that they should instead have been calculated in accordance with section

---

specific term of imprisonment or in the designation a particular crime receives." ' ") The court has thus firmly rejected a broad interpretation of *Olivas* that would require legislative classifications in criminal laws, because they may result in varying deprivations of liberty, to be subjected to strict scrutiny. (*Wilkinson*, *supra*, 33 Cal.4th at pp. 837–838; *Ward*, *supra*, 36 Cal.4th at p. 218.)

4019. Although defendant did not raise this contention below, it presents a pure question of law, and we will consider it now. (*Aguirre*, *supra*, 56 Cal.App.4th at p. 1139.)

Section 2933.1, subdivisions (a) and (c), provide that, notwithstanding section 4019, a person who is convicted of a violent felony (§ 667.5, subd. (c)) may not accrue more than 15 percent of worktime credit before being placed in prison. The crimes of which defendant was convicted, felony grand theft (§ 487, subd. (c)), theft from an elder or dependent person (§ 368, subd. (d)), and resisting arrest (§ 148, subd. (a)(1)), are not violent felonies for purposes of section 667.5 subdivision (c).) Defendant contends, therefore, that he is not subject to section 2399.1's limitation of conduct credits to 15 percent. Defendant is correct, and the Attorney General properly concedes this point. (*People v. Holford* (2012) 203 Cal.App.4th 155, 159, fn. 2; *People v. Philpot* (2004) 122 Cal.App.4th 893, 908.)

We have already concluded that defendant was not entitled to the one-for-one credits provided by the October 2011 amendment to section 4019. Defendant's conduct credits, therefore, must be calculated according to the version of section 4019 in effect at the time he committed his crimes. The parties agree that under this version of the statute, defendant was entitled to 456 days of conduct credits. We shall order the trial court to award credits accordingly.

### B. Cruel and Unusual Punishment

Defendant was 59 years old at the time he was sentenced to a term of 25 years to life under the Three Strikes law. He contends that the amount of time he will spend in prison before being eligible for parole exceeds his remaining life expectancy and that he therefore has been effectively sentenced to life in prison without the possibility of parole. This sentence for purse snatching, he argues, violates the Eighth Amendment to the federal Constitution (prohibiting infliction of "cruel and unusual punishments") and article I, section 17 of the California Constitution ("Cruel or unusual punishment may not be inflicted . . ."). "A sentence violates the state prohibition against cruel and unusual punishment [citation] if ' "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience." ' [Citations.] [¶] A sentence violates the federal

10

Constitution if it is 'grossly disproportionate' to the severity of the crime." (*People v. Russell* (2010) 187 Cal.App.4th 981, 993.)[4]

A number of cases have recently examined similar contentions, and they do not support defendant's contention. A recent opinion of our Supreme Court, *In re Coley* (2012) 55 Cal.4th 524 (*Coley*), provided an extensive review of the relevant jurisprudence from both federal and state courts. (*Id.* at pp. 537–551.) The defendant in *Coley* was convicted of the felony of failing to update his sex offender registration within five days of his birthday. (§ 290, former subd. (a)(1)(D), now § 290.012.) There was also evidence that he had failed to contact his parole office when he was released from prison, and that the Department of Justice had no record that he had ever registered as a sex offender. (*Coley*, *supra*, 55 Cal.4th at pp. 532–533.)

The court in *Coley* explained that after the Three Strikes law was enacted, the Untied States Supreme Court addressed a cruel and unusual punishment challenge to a sentence of 25 years to life for a defendant whose triggering offense was the nonviolent theft of three golf clubs. (*Coley*, *supra*, 55 Cal.4th at p. 529, citing *Ewing v. California* (2003) 538 U.S. 11 (*Ewing*).) The court explained: "In *Ewing*, the high court concluded, in a five-to-four decision, that, in light of the antirecidivist purpose of the Three Strikes law and the defendant's criminal history, the sentence imposed upon the defendant in that case was not unconstitutional. The lead opinion in *Ewing* (authored by Justice O'Connor), however, did not eliminate the possibility that some triggering offense, although designated a felony under California law, might be so minor and unrelated to the goal of deterring recidivism that a 25-year-to-life sentence would be 'grossly disproportionate' and constitute cruel and unusual punishment under the Eighth Amendment, even when imposed upon a defendant with a serious criminal record." (*Coley*, *supra*, 55 Cal.4th at p. 529.) This possibility reflected the rule that " '[e]mbodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that

---

[4] Although defendant technically forfeited this issue by failing to raise it below, we shall address it in the interest of judicial economy. (*People v. Russell*, *supra*, 187 Cal.App.4th at p. 993.)

11

punishment for crime should be graduated and proportioned to [the] offense." [Citation.]' " (*Id.* at p. 538, citing *Graham v. Florida* (2010) 560 U.S. 48, 59 (*Graham*), *Solem v. Helm* (1983) 463 U.S. 277, 284–292, *Harmelin v. Michigan* (1991) 501 U.S. 957, 996-1001, 997, 1009-1021, 1027 (*Harmelin*), and *Ewing*, *supra*, 538 U.S. at pp. 20–24, 32–35.)

The United States Supreme Court, however, has made clear that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77 (*Lockyer*).) Thus, the court in *Lockyer* concluded a Three Strikes sentence of two consecutive prison terms of 25 years to life for a defendant who had stolen approximately $150 worth of videotapes from two different stores did not offend the Eighth Amendment. (*Id.* at pp. 66, 77.) In *Ewing*, the court similarly upheld a Three Strikes sentence of 25 years to life for a defendant who had stolen three golf clubs. (*Ewing*, *supra*, 538 U.S. 11, 17–18, 30–31.) In *Harmelin*, the court upheld a mandatory term of life in prison without possibility of parole for possessing 672 grams of cocaine against an Eighth Amendment challenge. (*Harmelin*, *supra*, 501 U.S. 957, 961, 996.)

California courts have grappled with this issue in connection with defendants sentenced to Three Strikes terms for violating sex offender registration requirements. The defendant in *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1073 (*Carmony II*) had been convicted of a sex offense that triggered the lifelong requirement that he register as a sex offender. (Former § 290, subds. (a), (b), & (e).) Upon his eventual release from prison, he registered as a sex offender, and registered again a week later when he moved to a new residence. However, one month later, he failed to comply with the requirement that he register again within five working days of his birthday. (*Carmony II*, 127 Cal.App.4th at p. 1073.) The following month, he was arrested at his registered address for failing to comply with the annual registration requirement. (*Ibid*.) He was convicted of violating the sex offender registration requirement, admitted three prior conviction allegations under the Three Strikes law and one prior prison term, and was sentenced to a term of 26 years to life. (*Id.* at p. 1074.) The Court of Appeal noted that only "a rare

12

case . . . violates the prohibition against cruel and/or unusual punishment," but concluded this sentence for failing to provide duplicate registration fell within that class of rare cases. (*Id*. at pp. 1072–1073.) In doing so, it found that the offense "was an entirely passive, harmless, and technical violation of the registration law." (*Id*. at p. 1077.)

The court in *People v. Nichols* (2009) 176 Cal.App.4th 428 distinguished *Carmony II*. Unlike the defendant in *Carmony II*, whose triggering offense was the violation of the requirement that he update a (recent and still accurate) registration after his birthday, the defendant in *Nichols* violated the requirement that he register after he moved out of the city in which he had been registered. (Former § 290, subd. (f)(1); *Nichols*, *supra*, 176 Cal.App.4th at pp. 432–433 & fn. 2.) The Court of Appeal concluded an indeterminate life sentence for this crime did not constitute cruel and unusual punishment, stating, "Unlike the failure in *Carmony II*, defendant's failure to register thwarted the fundamental purpose of the registration law, thereby leaving the public at risk." (*Nichols*, 176 Cal.App.4th at p. 437; see also *People v. Meeks* (2004) 123 Cal.App.4th 695, 700–701, 708–710 [no Eighth Amendment violation where sex offender moved three times and lived for period of time on the streets without ever registering new address or transient status].) Our Supreme Court in *Coley* likewise distinguished *Carmony II*. The trial court in *Coley* had found that the defendant deliberately failed to register as a sex offender at all after his release from prison; in those circumstances, our high court concluded, a third strike sentence of 25 years to life for violating the registration requirement did not offend the Eighth Amendment. (*Coley*, *supra*, 55 Cal.4th at pp. 561–562.)

These authorities lead us to reject defendant's contention that a sentence of 25 years to life for his Third Strike offense violates the constitutional prohibitions of cruel and/or unusual punishment. The Three Strikes law has been consistently upheld against constitutional challenges, and similar terms for nonviolent crimes—such as stealing items from stores—have been found to be permissible. (See *Ewing*, *supra*, 538 U.S at pp. 17–18, 30–31 [golf clubs] and *Lockyer*, *supra*, 538 U.S. at pp. 66, 77 [videotapes].) Defendant's action in seizing a wallet directly from an elderly victim's hand was at least

13

as serious as the crimes in these cases. In no way can it be characterized as "an entirely passive, harmless, and technical violation" of the law. (See *Carmony II*, *supra*, 127 Cal.App.4th at p. 1077.) As the federal high court has explained, the gross disproportionality principle applies in "only the extraordinary case." (*Lockyer*, *supra*, 538 U.S. at p. 77.) This is not such a case. Nor does the sentence in these circumstances " 'shock[] the conscience' and offend[] fundamental notions of human dignity, considering the offender's history and the seriousness of his offenses." (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1092 [applying state constitutional standard].)

We are not persuaded otherwise by defendant's contention that because his sentence exceeds his remaining life expectancy, the sentence is de facto one of life without parole (LWOP) and therefore unconstitutional. The federal high court has cautioned against such an analysis, stating that an argument that a sentence of 50 years to life is effectively life without parole "misses the point. . . . [This] position would treat a sentence of life without parole for the 77-year-old person convicted of murder as equivalent to a sentence of life with the possibility of parole in 10 years for the same person convicted of the same crime. *Two different sentences do not become materially indistinguishable based solely upon the age of the persons sentenced.*" (*Lockyer*, *supra*, 538 U.S. at pp. 74–75, fn. 1, italics added; see also *Harmelin*, *supra*, 501 U.S. at p. 996 [no requirement of individualized sentencing in non-capital cases even where term of imprisonment exceeds life expectancy of older defendant].) Defendant's reliance on *People v. Mendez* (2010) 188 Cal.App.4th 47, 63, is unavailing. The defendant in *Mendez* was 16 years old at the time of the crime; under his sentence, he would not be eligible for parole until he was older than 88 years old, past his life expectancy. The court agreed that "[this] sentence and an LWOP sentence are 'materially indistinguishable,' " and concluded the sentence was grossly disproportionate to the defendant's crime. (*Id*. at pp. 50, 63–68.) *Mendez*, however, was not a Three Strikes case, and the defendant was a juvenile at the time of the crime, a status that raises special constitutional considerations. (*Mendez*, *supra*, 188 Cal.App.4th at pp. 63–64; see also *People v. Caballero* (2012) 55 Cal.4th 262, 268 [sentencing juvenile nonhomicide

14

offender to sentence with parole eligibility dates outside natural life expectancy constitutes cruel and unusual punishment]; *Graham*, *supra*, 560 U.S. 48, 73 [sentence of LWOP "improperly denies the juvenile offender a chance to demonstrate growth and maturity"].) Defendant here is well into adulthood, and received his sentence based on his long criminal history under the Three Strikes law. His age does not make the sentence unconstitutional under either the federal or the state constitution.

## C. Double Jeopardy

Defendant contends his sentence violates the Fifth Amendment prohibition against double jeopardy. According to defendant, by punishing his recidivism, his enhanced sentence effectively punishes him again for crimes of which he was convicted in the past.

As defendant acknowledges, however, the United States Supreme Court has rejected his view. The high court has stated: "The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.' . . . [Citation.] Historically, we have found double jeopardy protections inapplicable to sentencing proceedings [citation] because the determinations at issue do not place a defendant in jeopardy for an 'offense,' see, *e.g., Nichols* v. *United States,* 511 U.S. 738, 747 (1994) (noting that repeat-offender laws ' "penaliz[e] only the last offense committed by the defendant" '). Nor have sentence enhancements been construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction. [Citations.] An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' *Gryger v. Burke,* 334 U.S. 728, 732 (1948); cf. *Moore v. Missouri,* 159 U.S. 673, 678 (1895) ('The State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offences than for a first offence')." (*Monge v. California* (1998) 524 U.S. 721, 727–728.) As the court stated elsewhere, "Enhancement statutes, whether in the nature of criminal

15

history provisions . . . or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction. . . . '[T]his court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant. [Citations.]'" (*Nichols v. United States*, *supra*, 511 U.S. at p. 747.)

In light of these consistent pronouncements by the United States Supreme Court on a matter of constitutional law, we reject defendant's contention that his sentence exposes him to double jeopardy.

## D. Trial Court's Refusal to Dismiss Prior Strikes

Defendant contends the trial court abused its discretion in refusing to dismiss some or all of his prior strikes. As we have explained, the jury found defendant had been convicted of, and served prison terms for, seven previous felonies. Five of these prior convictions were strikes: robberies in 1976, 1979 (§ 211), and 1991 (§ 212.5, subd. (b)), and two convictions for lewd and lascivious acts with a minor under the age of 14 by force or fear in 1999 (§ 288, subd. (b)(1)). The remaining convictions were for possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) and transportation or sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)), in 1986 and 1989, respectively.

Defendant asked the trial court to dismiss some or all of his prior strikes pursuant to section 1385, which provides in pertinent part: "(a) The judge or magistrate may, . . . in furtherance of justice, order an action to be dismissed." Our Supreme Court held in *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, 529–530 (*Romero*), that a trial court has discretion to strike prior felony conviction allegations in cases arising under the Three Strikes law. In doing so, the court must consider the " 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' " (*Id*. at p. 531.) Our high court later expounded on this rule, stating that in ruling whether to strike a prior serious and/or violent felony conviction allegation, or in reviewing such a ruling, the court must "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions,

16

and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) In accordance with these principles, our Supreme Court found the trial court had not abused its discretion in striking a prior conviction allegation where the defendant was already receiving a lengthy sentence, his prior convictions all arose from a single period of aberrant behavior for which he served a single prison term, he cooperated with police, his crimes were related to drug addiction, and his criminal history did not include any actual violence. (*People v. Garcia* (1999) 20 Cal.4th 490, 503 (*Garcia*).) As explained in *People v. Strong* (2001) 87 Cal.App.4th 328, 338, 340 (*Strong*), the Three Strikes law was devised for "revolving-door career criminal[s]," and "longer sentences for career criminals who commit at least one serious or violent felony certainly goes to the heart of the statute's purpose—or spirit."

In refusing to dismiss defendant's prior convictions, the trial court explained that it had considered the factors of whether defendant's prior convictions arose from a single period of aberrant behavior, whether he cooperated with police, whether his crimes were related to drug addiction, and whether his criminal history included violence (see *Garcia*, *supra*, 20 Cal.4th at p. 503), as well as the factors discussed in *Romero* and *Strong*. The court noted that defendant had a history of preying on vulnerable victims: the child victim of his sexual offenses was only eight years old, the victims of his prior robberies were elderly, and the prior convictions involved violence. Defendant did not cooperate with the police in connection with his present offense. His criminal record did not involve a single period of aberrant behavior, but rather a "long and continuous criminal career."

We can discern no abuse of the trial court's discretion. Defendant's history does not show merely a single instance of aberrant or youthful behavior; rather it reveals a persistent pattern of criminal activity throughout defendant's adult life, punctuated by multiple prison terms. His current offense, while it did not involve physical violence

against the elderly victim, cannot be described as a minor or technical violation of the law. Defendant argues that his age takes him outside the spirit of the Three Strikes law. But, as the court in *Strong* explained, "middle age, considered alone, cannot take a defendant outside the spirit of the law; otherwise the very factor that takes a defendant within the spirit of the law—a lengthy criminal career with at least one serious or violent felony—would have the inevitable consequence—age—that would purportedly take him outside it." (*Strong*, *supra*, 87 Cal.App.4th at p. 332.) Similarly here, the trial court could reasonably conclude that defendant's lengthy criminal history, spanning more than three decades, does not take him outside the spirit of the Three Strikes law.

### E. Restitution Fines

Defendant contends the trial court erred in setting the restitution fund fine. (§ 1202.4, subd. (b)(1).) Section 1202.4, subdivision (b) requires a court to impose a restitution fine unless it finds compelling reasons for not doing so. The version of subdivision (b) in effect at the time defendant committed his crimes went on to provide in pertinent part: "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . [¶] (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." In 2012, shortly before defendant was sentenced, section 1202.4 was amended to increase the minimum restitution fine to $240 dollars, and to provide that the court could set the fine by multiplying "the minimum fine pursuant to paragraph (1)" multiplied by the number of years of imprisonment and the number of felonies. (Stats. 2011, ch. 358, § 1.) The parties agree that because the imposition of restitution fines constitutes punishment, it is subject to the ex post facto clause of the United States Constitution, and that the court must therefore apply the version in effect at the time of the crimes. (*People v. Souza* (2012) 54 Cal.4th 90, 143.)

Section 1204.45, in turn, requires the court, at the time it imposes a restitution fine pursuant to 1202.4, subdivision (b), to "assess an additional parole revocation restitution fine *in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4*" if the defendant's sentence includes a period of parole.  This fine is suspended unless the person violates parole.  (Former § 1202.45, stats. 2007, ch. 302; see also § 1202.45, subd. (c), italics added.)

In imposing the restitution fines under sections 1202.4 and 1202.45, the trial court stated:  "The restitution fine for Count 1 is dictated by Penal Code, Section 1202.4(b)(10) [*sic*], which states it is the number of years of imprisonment multiplied by $240 for a total of $6,000.  [¶] The Court further imposes, pursuant to Penal Code, Section 1202.45, an additional restitution fine known as a parole revocation fine in the same amount of $200 for each year of imprisonment for a total of $5,000.  [¶] Payment of that fine is suspended and will remain suspended unless the defendant's parole at some future point is revoked."

Defendant argues the trial court erroneously applied the later version of section 1202.4, that the court mechanically applied a formula (the minimum fine times 25, the number of years of his imprisonment) rather than exercising its discretion to set the amount of the fine, and that the court erred in assessing different amounts under sections 1202.4 and 1202.45.

The Attorney General first responds that defendant forfeited his challenge to the restitution fine by failing to object below.  (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [waiver doctrine applies to challenges to trial court's failure to properly make or articulate discretionary sentencing choices].)  To the extent defendant's challenge is to the trial court's decision to multiply the base fine by the number of years of imprisonment, we agree with the Attorney General that the challenge is to the court's failure to articulate its sentencing choices, and the issue is therefore waived.

We reach a different conclusion as to defendant's challenge to the disparity between the two fines and the appropriateness of using $240 as a base fine under section 1202.4.  The trial court's words leave no doubt that in setting the restitution fine it was

19

applying the newer version of section 1202.4—which has $240 as the base fee—rather than the version in effect at the time of defendant's crimes—which had a $200 base fee. Inexplicably, however, the court appears to have used the amount in the earlier version of section 1202.4 in setting the amount of the *parole revocation fine*, leading to fines of two different amounts, contrary to the clear language of section 1202.45. Thus, the trial court ordered a restitution fine of $6,000 ($240 times 25 years of incarceration) and a parole revocation fine of $5,000 ($200 times 25 years of incarceration). The propriety of the trial court's actions present a legal issue, which we will review even in the absence of an objection below. (See *People v. Smith* (2001) 24 Cal.4th 849, 853 [error in imposing parole revocation fine (§ 1202.45) an amount different from restitution fine (§ 1202.4) reviewable on appeal because presents pure question of law and is correctable without remanding for further findings]; *People v. Martinez* (2002) 95 Cal.App.4th 581, 587 [error in setting different amounts for restitution fine and parole revocation fine reviewed in absence of objection below].)

We are satisfied that the trial court intended to impose a restitution fine of the minimum statutory amount times the number of years of defendant's sentence. Under the version of section 1202.4, subdivision (b), in effect at the time of defendant's crimes, the minimum statutory amount was $200, which, when multiplied by the 25 years of defendant's term, would lead to a total restitution fine of $5,000—the same amount as the parole revocation fine the trial court assessed. We shall therefore order the restitution fine reduced to $5,000.

### III.                                       DISPOSITION

The judgment is modified to reflect (1) that defendant has 456 days of presentence conduct credits and (2) that both the restitution fine under section 1202.4, subdivision (b) and the parole revocation fine under section 1202.45 are set at $5,000. The trial court is directed to amend the abstract of judgment accordingly and forward an amended abstract to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

20

_____
Rivera, J.

We concur:


_____
Reardon, Acting P.J.


_____
Humes, J.