[No. C057665. Third Dist. Aug. 5, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALLEN NICHOLS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I through VIII and X.

## COUNSEL

Joseph Shipp, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—This case presented a simple factual question for the jury to resolve—did defendant David Allen Nichols, a convicted sex offender required to register under Penal Code former section 290, register with the Rocklin Police Department within five days of moving out of Rocklin? The jury determined he did not, in violation of Penal Code former section 290, subdivision (f)(1).[1] (See current § 290.013, subd. (a).)

The jury also determined, however, that defendant had previously been convicted of three felonies and found true the allegation that these felonies constituted serious felonies within the meaning of the "Three Strikes" law. (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i).) In addition, the trial court determined defendant had served three prior prison terms within the meaning of section 667.5, subdivision (b).

---

[1] All subsequent undesignated references to sections are to the Penal Code.

The trial court denied defendant's motion to strike his prior "strike" convictions, and it sentenced him to a prison term of 28 years to life: 25 years to life on the failure to register, plus one year for each of the prior prison terms.

Defendant appeals, alleging the following to be prejudicial errors:

1. The trial court admitted excessive and inflammatory evidence;

2. The prosecutor committed misconduct;

3. The court committed instructional error;

4. The true findings on the "strike" priors were not supported by substantial evidence;

5. The true findings on two of the prior prison term findings were not supported by substantial evidence;

6. The court erred in refusing to submit any prior conviction issues, except authentication, to the jury;

7. These errors constituted cumulative error;

8. The court abused its discretion when it denied defendant's motion to strike his prior strikes;

9. The prison sentence under the Three Strikes law constituted cruel and unusual punishment; and

10. The abstract of judgment must be corrected to recite the correct statutory authority for the prior prison term enhancements.

Except to order the abstract of judgment corrected, we affirm the judgment.

## FACTS

Testifying at trial, defendant admitted three prior felony convictions. He was convicted in 1978 in Oregon of robbery; in 1982 of armed bank robbery,

a federal offense; and in 1996 in Humboldt County of forcible oral copulation in violation of section 288a. Defendant committed this last offense in 1994 while he was on federal parole.

Defendant knew he was required to register under former section 290 as a result of his sex offense conviction. Indeed, when asked if he was aware of his requirement to register, defendant replied, "Yes, pretty deeply actually." After completing his state prison sentence on the sex crime, he served four more years in prison due to the federal parole violation. During this incarceration and while serving as the head education clerk, he helped assemble a database of resources inmates could use upon their release. As part of this process, he specifically researched the registration requirements imposed on him under California law. He knew he had to register each time he moved.[2]

Defendant was released from custody in November 2004. Dayna Ward, a federal parole officer, supervised defendant. She had supervised him briefly in 1994 when he was first placed on federal parole. She met with defendant upon his release from state prison in 2004 and reviewed with him a notice of requirements for sex offender registration. Defendant signed the form, and Officer Ward directed him to register within five days.

Officer Ward also reviewed with defendant his conditions of parole. One of those conditions required defendant to notify his parole officer within two days of any change of his residence. Another condition prohibited defendant from leaving or moving out of the boundaries of the federal judicial Eastern District of California without prior approval from a parole officer.

In December 2004, upon his release from custody, defendant registered in Sacramento, the city where he lived. He registered again in Sacramento on January 24, 2005, upon changing his address. He registered in Sacramento a

---

[2] At the time of defendant's actions here, former section 290 required defendant to register with the chief of police of the city where he was residing within five working days of moving into the city. (Former § 290, subd. (a)(1)(A); Stats. 2004, ch. 761, § 1.3.) If he moved out of that city, he had to notify his former city's police chief of his new address within five working days, as well as register with the police chief of his new city. (Former § 290, subd. (f)(1); Stats. 2004, ch. 761, § 1.3.) If he became transient, he had five working days within which to register in the jurisdiction in which he was present on the fifth day, and he had to register once every 30 days in whatever jurisdiction where he was present. (Former § 290, subd. (a)(1)(C)(i); Stats. 2004, ch. 761, § 1.3.) Defendant also had to register annually within five working days of his birthday, regardless of where he was living. (Former § 290, subd. (a)(1)(C)(iii), (D); Stats. 2004, ch. 761, § 1.3.)

third time upon his birthday, February 15, 2005, as required by former section 290.

In early March 2005, defendant moved to a new residence on Aitken Dairy Road in Rocklin. He leased his Rocklin residence along with five other tenants: Eliza Edwards; defendant's business partner, Jim Dresser; a Russian couple; and the homeowner's father.

Upon moving to Rocklin, defendant registered with the Rocklin Police Department. He also informed Officer Ward of his new address. (There was no record, however, that he notified the Sacramento Police Department of his move to Rocklin. Defendant was not charged with this omission.)

In early April 2005, defendant left the Eastern District without permission from his parole officer and he moved out of the Rocklin house. On or about April 4, defendant told cotenant Edwards he had had an altercation with Dresser, and he asked if she would take care of his cat. He said he had to go and that he would be back. She heard him leave on his motorcycle. She never saw him again at the house.

Defendant testified that he drove to Big Sur, looked at the ocean, and then decided to go back. On April 7, 2005, he went into the parole office to speak with Officer Ward. She was on vacation, so he met with her supervisor, Officer Richard Ertola. He told Officer Ertola he had left the district on April 4. Officer Ertola took the violation under advisement, and he told defendant to contact Officer Ward on April 18.

However, defendant testified that after meeting with Officer Ertola, he got on his motorcycle and left. He never went back to Rocklin. He also had no further contact with Officer Ward.

Defendant drifted around the country, attending shows and festivals, and "hiding out with the hippies." He was arrested on December 31, 2005, in San Francisco. He gave a false name to the police when he was arrested because, he said, he knew he had violated his parole.

The factual dispute at trial, which the jury decided against defendant, centered on whether defendant complied with his former section 290 registration requirements when he "moved" from his Rocklin residence. Clerks from

the Rocklin Police Department identified defendant's registration dated March 14, 2005, which defendant filed when he moved to Rocklin. One of the clerks who reviewed defendant's registration that day, Deeann Ralphs, noticed he had not provided any information about vehicles he owned. Defendant said he did not own any, so she wrote "NA" on the form. She would not have written NA unless he had told her he did not own any vehicles.

Ralphs, who was the police department's custodian of records, said defendant did not register again with the Rocklin Police Department because there were no additional registration forms in the file. Defendant had submitted a copy of his lease for the Aitken Dairy Road residence, but there were no records in the file indicating defendant had changed his address after March 14, 2005.

Defendant, however, testified he returned to the Rocklin Police Department twice after registering there on March 14, both times in response to the clerks' request that he provide proof of his residence and vehicle information. On the first occasion, he went in without an appointment to drop off a copy of his lease agreement.

The second occasion occurred in April right before he left for Big Sur. He claimed that on this visit, he completed a form to provide the department with the vehicle identification number from his motorcycle. Where the form asked for his address, defendant wrote his Aitken Dairy Road address and then wrote the words "in transit" after it. He gave the completed form to a clerk and left. He did not receive a copy of the form. It was defendant's understanding that writing the word "transit" on the form satisfied his obligation to inform the police department of his move out of Rocklin since he did not know where he would be living and he would be transient.

On the prosecution's rebuttal, department clerk Ralphs testified that a registrant who is moving and is going to become transient must note that information on a form. She also stated that registrants always receive a copy of their completed registration forms. The two other clerks who worked for the department testified they had not processed any paperwork for defendant regarding his move out of Rocklin.

We will provide additional background information as necessary.

## DISCUSSION

## I–VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IX

### *Cruel and Unusual Punishment*

Defendant contends his indeterminate life sentence for failing to register within five days of moving from Rocklin violates federal and state constitutional prohibitions against cruel and/or unusual punishment. We disagree.

Our court has seen both sides of this issue. In *People v. Carmony* (2005) 127 Cal.App.4th 1066 [26 Cal.Rptr.3d 365] (*Carmony II*), we determined a 25-year-to-life sentence imposed on a registered sex offender for failing to register within five days of his birthday was unconstitutional. However, in *People v. Meeks* (2004) 123 Cal.App.4th 695 [20 Cal.Rptr.3d 445] (*Meeks*), we determined a 25-year-to-life sentence imposed on a registered sex offender for failing to register within five days of changing his address was *not* unconstitutional.

■ In both cases, we sought to determine under federal law whether "an inference of gross disproportionality" (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1005 [115 L.Ed.2d 836, 871, 111 S.Ct. 2680] (conc. opn. of Kennedy, J.)) could be made by weighing the crime and the defendant's sentence "in light of the harm caused or threatened to the victim or society, and the culpability of the offender" (*Solem v. Helm* (1983) 463 U.S. 277, 292 [77 L.Ed.2d 637, 651, 103 S.Ct. 3001]).

Similarly, we sought to determine under state law whether the sentence was so disproportionate to the crime that it "shocks the conscience" in light of the defendant's history and the seriousness of his offenses. (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].)

In *Carmony II*, we determined an inference of gross disproportionality existed. "While a violation of section 290 is classified as a felony," we wrote, "the instant offense was a passive, nonviolent, regulatory offense that posed no direct or immediate danger to society. Defendant committed this offense by violating the annual registration requirement (former § 290, subd. (a)(1)(C)), having correctly registered the proper information the month

---

*See footnote, *ante*, page 428.

before. Obviously, no change had occurred in the intervening period and defendant's parole agent was aware of this fact. Thus, because defendant did not evade or intend to evade law enforcement officers, his offense was the most technical and harmless violation of the registration law we have seen." (*Carmony II, supra*, 127 Cal.App.4th at p. 1078.)

"Although this requirement [to register annually] serves a legitimate purpose," we continued, "it is nevertheless a backup measure to ensure that authorities have current accurate information. In this case, when defendant failed to register within five days of his birthday, he was still on parole, had recently updated his registration, had not moved or changed any other required registration information during the one month since he registered, and was in contact with his parole officer. Therefore, his failure to register was completely harmless and no worse than a breach of an overtime parking ordinance. [Citation.]" (*Carmony II, supra*, 127 Cal.App.4th at p. 1079.)

In light of these circumstances, and the fact that the defendant's three strikes offenses were remote in time and nature, we concluded the indeterminate life sentence was grossly disproportionate to the gravity of the offense. (*Carmony II, supra*, 127 Cal.App.4th at p. 1081.)

By comparison, in *Meeks*, we determined an inference of gross disproportionality did not exist. In that case, the defendant, over the course of more than two years, had moved three times and lived for a period of time on the street without ever registering his new addresses or his transient status. (*Meeks, supra*, 123 Cal.App.4th at pp. 700–701.)

We concluded the indeterminate life sentence for his offense was no more disproportionate than the indeterminate life sentence upheld in *Ewing v. California* (2003) 538 U.S. 11 [155 L.Ed.2d 108, 123 S.Ct. 1179], for a third strike of grand theft for shoplifting three golf clubs. "[Defendant] has violated a law that is intended to avoid, or at least minimize, the danger to public safety posed by those who have been convicted of certain sexual offenses. It is at least as serious as theft of three golf clubs." (*Meeks, supra*, 123 Cal.App.4th at p. 708.)

█ The *Carmony II* court distinguished the seriousness of the registration offense before it with the one before the *Meeks* court. The *Carmony II* court noted "the offense committed by Meeks was not the technical violation committed by defendant. Meeks failed to register after changing his residence and therefore, unlike in the present case, law enforcement authorities did not have Meeks's correct address and information." (*Carmony II, supra*, 127 Cal.App.4th at p. 1082, fn. 11; see also *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875, 885 (*Gonzalez*) ["California courts have recognized that the

distinction between a conviction for failure to register after a change of address . . . and a conviction for failure to update registration annually . . . is critical," citing *Meeks* and *Carmony II*].)

It is this distinction that supports the sentence given in this case. Unlike the failure in *Carmony II*, defendant's failure to register thwarted the fundamental purpose of the registration law, thereby leaving the public at risk. "The purpose of the sex offender registration law is to require that the offender identify his present address to law enforcement authorities so that he or she is readily available for police surveillance." (*Carmony II, supra,* 127 Cal.App.4th at p. 1072.)

The registration law's "mandate that sex offenders register any change of address relates directly to the state's interest in ensuring that it knows the whereabouts of its sex offenders. As noted by the California Supreme Court, '[e]nsuring offenders are readily available for police surveillance depends on timely change-of-address notification.' [*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]] (internal quotation marks and citation omitted)." (*Gonzalez, supra,* 551 F.3d at p. 884.)

█ Here, for a period of over eight months, defendant's whereabouts were unknown. Even his federal parole officer did not know where he was. He was drifting around the country and "hiding out with the hippies." That is hardly a condition of being readily available for police surveillance. Such blatant disregard of the registration act and complete undercutting of the act's purposes is a serious offense.

Defendant's failure to register when he left Rocklin and his thwarting the purpose of the registration act of being able to be located, coupled with the seriousness of his prior convictions and his sustained criminality, all demonstrate his sentence was not grossly disproportionate to his offense. Under these circumstances, his sentence does not shock the conscience. The sentence thus does not constitute cruel and/or unusual punishment under the federal or California Constitutions.

## X

### *Abstract of Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 428.

## DISPOSITION

The judgment is affirmed. The clerk of the superior court is ordered to correct the abstract of judgment to state the three one-year enhancements were imposed pursuant to Penal Code section 667.5, and to forward the corrected abstract to the Department of Corrections and Rehabilitation.

Blease, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2009, S176035.