Filed 7/18/14  P. v. Ingram CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058021 |
| v. | (Super.Ct.No. RIF10003145) |
| HOADENA INGRAM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed with directions.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant Hoadena Ingram guilty of failing to inform local law enforcement, with whom he was already registered as a sex offender, of his new address within five working days of moving to another law enforcement agency's jurisdiction. (Pen. Code,[1] § 290.013, subd. (a).) Defendant admitted he suffered four prior serious and violent felony convictions (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)), but moved to strike them for purposes of sentencing, arguing a three-strike sentence of 25 years to life for his current conviction would constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. The trial court denied the motion, and sentenced defendant to 25 years to life.

On appeal, defendant contends: (1) his conviction under section 290.013, subdivision (a), was for a technical violation of a sex offender's obligations under the Sex Offender Registration Act (SORA) (§ 290 et seq.) and, therefore, a sentence of 25 years to life is disproportionate to the severity of his crime in violation of the Eighth Amendment; (2) given his age and life expectancy,[2] 25 years to life is a de facto sentence of life without the possibility of parole (LWOP), in violation of the Eighth Amendment; (3) the trial court abused its discretion by denying his request to strike his prior convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Defendant moved this court to take judicial notice of a life expectancy table contained in a National Vital Statistics Report prepared by the Centers for Disease Control and Prevention. We deferred ruling on the motion and, as explained *post*, we will deny the motion.

avoid imposing a sentence of 25 years to life that is cruel and unusual under the Eighth Amendment; and (4) the trial court erred by not awarding him the correct amount of custody and conduct credits toward his sentence.

We conclude defendant's violation of section 290.013, subdivision (a), was not merely technical, and because his violation frustrated the purpose of SORA by leaving law enforcement unaware of his current residence and whereabouts, a sentence of 25 years to life is not disproportionate to the severity of his crime. As for defendant's second Eighth Amendment claim, we conclude the de facto LWOP cases do not assist defendant because they are limited to defendants who were juveniles when they committed their crimes. Because we find no Eighth Amendment violation, we conclude the trial court did not abuse its discretion by denying defendant's *Romero* request based on his Eighth Amendment claims. Finally, we conclude defendant is entitled to an additional day of credit for actual time spent in presentence credit, but to a lesser amount of conduct credits than awarded by the trial court, and we remand for the trial court to enter a correct award. In all other respects, we affirm the judgment.

I.

FACTS

In the information, the People alleged defendant was required to register as a sex offender under section 290, and alleged he failed to inform the Moreno Valley Police Department (MVPD), with whom he was registered, within five working days of moving to a new address in another law enforcement agency's jurisdiction. (§ 290.013, subd. (a).) The People also alleged defendant suffered four prior strike convictions for

3

serious and violent felonies within the meaning of section 667, subdivisions (c) and (e)(2)(A), and section 1170.12, subdivision (c)(2)(A), as follows: (1) on November 20, 1984, defendant suffered a conviction for one count of rape (§ 261, subd. (a)); (2) on November 20, 1984, defendant suffered a conviction for one count of oral copulation (§ 288a, subd. (d)); (3) on November 20, 1984, defendant suffered a conviction for a second count of oral copulation (§ 288a, subd. (d)); and (4) on December 1, 1993, defendant suffered a conviction for one count of oral copulation (§ 288, subd. (d)).

At trial, defendant stipulated he was required to register for life as a sex offender based on a prior conviction, and stipulated he knew he was required to inform law enforcement where he was last registered within five working days of moving to an address outside that law enforcement agency's jurisdiction.

Sergeant Reinbolz of the Riverside County Sheriff's Department testified that in 2010 he was an investigator with the MVPD assigned to investigate sexual assault and child abuse cases. In 2011, Reinbolz began registering sex offenders for the MVPD and was the department's custodian of records for sex offender registration files. Reinbolz testified about the MVPD's procedures for registering sex offenders. When a sex offender came to register at a Moreno Valley police station, they provided their personal information, including the address where they were going to be living, and provided a fingerprint. An investigator or sworn deputy took the information and completed form 8102 (mandated by the Dept. of Justice (DOJ)), which the registrant verified as correct and then signed. Once the form was completed, the registrant was given a copy, and the MVPD maintained a hard copy in a locked cabinet at that particular station or at the

4

warrant's division of the sheriff's department. An office assistant then entered the information from the form into a computer database maintained by the DOJ and accessible by law enforcement agencies throughout the state.

Reinbolz testified sex offenders who are required to register pursuant to section 290 must notify local law enforcement within five working days of first moving to an address within that agency's jurisdiction. The registered sex offender must annually renew their registration with local law enforcement within five working days of their birthday, and must inform the law enforcement agency within five working days if they move to another address within that law enforcement agency's jurisdiction. Finally, if the registered sex offender subsequently moves to an address outside of that law enforcement agency's jurisdiction, they must inform the agency with whom they are currently registered of the new address within five working days of the move. This information is printed on the back of form 8102.

Reinbolz identified exhibit No. 4, which was a verified copy of the form 8102 defendant completed on December 4, 2008, when he moved to the city of Moreno Valley and registered as living in an apartment on David Lane. Reinbolz also identified exhibit No. 5, which was a certified copy of defendant's latest sex offender registration form on file with MVPD and indicated defendant renewed his registration in December 2009 with the same David Lane address. Reinbolz testified he found no other registration form indicating defendant "deregistered" from MVPD's jurisdiction, and Reinbolz testified the last registered address on file for defendant was on David Lane in Moreno Valley. Had defendant "deregistered" his David Lane residence, a copy of the form would have been

5

found in the MVPD files. Reinbolz testified that, as the custodian of records, the registration forms on file for defendant would lead him to believe defendant still lived on David Lane.

Investigator Casey with the Riverside County District Attorney's Office (RCDA) testified she was assigned to a compliance team with the Sexual Assault Felony Enforcement (SAFE) Task Force, which checked on registered sex offenders to ensure they were living at their registered addresses. Each month, Casey's team performed door-to-door checks on registered sex offenders in one zip code of Riverside County. In May 2010, Casey's team checked registered sex offenders in the zip code that included the David Lane residence in Moreno Valley where defendant had been registered. The members of Casey's team were given a stack of information packets for each registered sex offender, and they traveled to the last known residence to verify with the registrant, a family member, or a neighbor, that the registrant still lived there. Casey received the packet for defendant, and on May 18 she traveled to the David Lane address. Casey knocked on the door to the residence, but no one answered. She then knocked on the door of the neighboring apartment, and spoke to a woman who answered the door. Casey obtained some information from the woman and then referred the case to another investigator.

Investigator Cadwell, also with RCDA and a member of the SAFE task force, testified he performs follow-up investigations when a member of the compliance team is unable to verify that a registered sex offender still lives at their last registered address. Cadwell testified defendant's case was referred to him on June 7, 2010. He checked the

6

Megan's Law Web site, the DOJ database, and the hard copy of defendant's form 8102 to make sure he had the correct last registered address for defendant, and saw that as of June 7 defendant was still registered as living at the David Lane address. Cadwell could not tell from those sources whether defendant had "deregistered" his David Lane address.

The next day, Cadwell drove to the David Lane address and knocked on the door. A man named Patterson answered the door and indicated he was the current resident of the apartment. After speaking to Patterson, Cadwell concluded defendant's whereabouts were unknown.

Cadwell then contacted the manager of the apartment complex and asked her if she knew where defendant was. The information Cadwell gathered from the apartment manager led him to believe defendant had moved to the jurisdiction of another law enforcement agency, so he contacted that agency. Cadwell spoke to Detective McCullough of the Rialto Police Department, and based on the information he received from McCullough, Cadwell submitted defendant's case to the district attorney's office.

Detective McCullough testified she is assigned to the Rialto Police Department's special victims unit. On June 17, 2010, McCullough spoke to defendant at the Rialto Police station. McCullough asked defendant if he knew he was required to register as a sex offender in Rialto, and defendant said he was there to register. McCullough also asked defendant if he "deregistered" out of his latest place of registration in Riverside County. Defendant told the detective he did not know he was required to "register out" of his last place of registration. The detective showed defendant a form 8102 he had previously completed in Rialto, and defendant said he may have signed the form but did

7

not understand it. Defendant informed the detective he first registered as a sex offender in 1989, but he did not know he was required to register out of one place when moving to another. Finally, defendant told McCullough he was already living in Rialto at the time of the interview, and he admitted he did not register out of Riverside County and had not yet registered his new address in Rialto.

Ms. Parker testified she manages four apartment buildings in the Inland Empire, including one on David Lane in Moreno Valley. Parker testified that defendant and his wife leased their apartment on David Lane in March 2008, and they vacated the apartment in April 2010. The following month, defendant spoke to Parker and told her he was living in Rialto at the time.

A jury found defendant guilty on the sole count of failing to inform the MVPD within five working days of moving from its jurisdiction. Defendant waived his right to a trial on the four prior conviction allegations, and admitted them as they were alleged.[3]

---

[3] In the respondent's brief, the People contend defendant admitted that in 1984 he suffered a conviction for rape in concert, in violation of section 261, subdivision (a)(2), and section 264.1. Not so. The information alleged that on November 20, 1984, defendant was "convicted of the crime of RAPE, a serious and violent felony, in violation of Penal Code section 261, subdivision (a)," and in open court defendant admitted that "on November 20th, 1984, [he was] convicted of a strike offense of [section] 261A . . . ." The People did not plead and prove, and defendant did not admit, that the prior rape conviction was for a rape committed in concert.

Prior to sentencing, defendant requested that the trial court strike his prior strike convictions pursuant to section 1385 and *Romero*, *supra*, 13 Cal.4th 497, to avoid imposing a sentence of 25 years to life under the three strikes law. Among other things, defendant argued imposition of a sentence of 25 years to life would be a grossly disproportionate punishment for his conviction of failure to register in violation of section 290.013, subdivision (a) and, therefore, would violate the Eighth Amendment prohibition of cruel and unusual punishment.

At the hearing on defendant's *Romero* request, the trial court noted it had previously stricken strike priors in similar sex offender registration cases. However, after considering the seriousness and violent nature of defendant's admitted strike priors, as well as his long criminal history—which included one prior conviction for failing to register pursuant to section 290 and a pending charge of lewd exposure—the court denied the request.

The court sentenced defendant to 25 years to life, and awarded defendant 549 days of credit for actual time spent in presentence custody and another 548 days of conduct credit pursuant to section 4019, for a total of 1,097 days. Defendant timely appealed.

II.

DISCUSSION

A.

DEFENDANT'S SENTENCE OF 25 YEARS TO LIFE DOES NOT

CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION

OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Defendant contends his sentence of 25 years to life violates the Eighth Amendment to the United States Constitution[4] because that severe a punishment is disproportionate to his purportedly technical violation of SORA, and because it is a de facto LWOP sentence for a man of his age and with his life expectancy. Because the trial court denied his *Romero* request to strike some or all of his strike priors to avoid such an unconstitutional sentence, defendant argues the trial court abused its discretion. We find no Eighth Amendment infirmity in defendant's sentence and, therefore, find no abuse of discretion by the trial court.

---

[4] Defendant's cruel and unusual punishment argument in his written *Romero* request was premised exclusively on the Eighth Amendment and made no mention whatsoever of the California Constitution. Nor did defendant's appointed trial counsel argue during the hearing that a sentence of 25 years to life would constitute cruel or unusual punishment in violation of article I, section 17 of the California Constitution. Because defendant forfeited any claim under the California Constitution, we confine ourselves to his claims under the federal constitution. (See, e.g., *In re Coley* (2012) 55 Cal.4th 524, 537, fn. 8 (*Coley*).) In any event, as the parties conceded at oral argument, the result would be the same even if we were to address the state constitutional argument.

1.

<u>Defendant's Violation of Section 290.013, Subdivision (a), Was Not Technical in</u>

<u>Nature, and a Sentence of 25 Years to Life Is Not a Disproportionate Punishment</u>

The Eighth Amendment prohibits sentences that are grossly disproportionate to the crime. (*Ewing v. California* (2003) 538 U.S. 11, 23-24.) In applying this principle of proportionality, a court begins by comparing the gravity of the offense which, in the case of a three strikes sentence, includes both the defendants' current crime and history of recidivism, with the severity of the sentence. (*Coley*, *supra*, 55 Cal.4th at p. 542.) If the comparison leads the reviewing court to draw an inference of disproportionately, it must then compare the sentence to sentences imposed on similar defendants in the same jurisdiction and to the sentences imposed on similar defendants in other jurisdictions. (*Ibid*.) If this inter- and intra-jurisdictional comparison validates the court's initial inference of disproportionality, the sentence is cruel and unusual. (*Ibid*.)

At trial, defendant stipulated he is required to register for life under section 290 as a convicted sex offender. "Section 290 'applies automatically to the enumerated offenses, and imposes on each person convicted a lifelong obligation to register.' [Citations.] Registration is mandatory [citation], and is 'not a permissible subject of plea agreement negotiation' [citation]. It is intended to promote the "'state interest in controlling crime and preventing recidivism in sex offenders.'" [Citation.] As this court has consistently reiterated: 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar

11

offenses in the future. [Citation.]' [Citations.] Plainly, the Legislature perceives that sex offenders pose a 'continuing threat to society' [citation] and require constant vigilance. [Citation.]" (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 (*Wright*).)

Defendant also stipulated he knew of his obligation to inform law enforcement where he was last registered within five working days of moving to a new address within the jurisdiction of another law enforcement agency. "Under [section 290.013, subdivision (a)], whenever a person required to register changes addresses, he or she must notify the last registering agency of the move within five working days. The requirement to give notice of the move applies regardless of whether the registrant knows his or her new address. [Citation.] The duty to notify the agency within five days is triggered by any change of address or location. [Citations.]" (*People v. Villegas* (2012) 205 Cal.App.4th 642, 647.)

"Supplemental address change information helps law enforcement agencies keep track of sex offenders who move within the same city or county or are transient. In large cities such as Los Angeles or huge counties like San Bernardino, where offenders can easily relocate without reregistering, [former] section 290[, subdivision] (f) [now section 290.013] seeks to prevent them from disappearing from the rolls. Ensuring offenders are 'readily available for police surveillance' [citation] depends on timely change-of-address notification. Without it law enforcement efforts will be frustrated and the statutory purpose thwarted. The statute is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts. Compliance is essential to that objective; lack of compliance fatal." (*Wright*, *supra*, 15 Cal.4th at p. 527.)

In *Coley*, our Supreme Court addressed whether a sentence of 25 years to life under the three strikes law, for a conviction of failing to register under section 290, violated the Eighth Amendment. In that case, the defendant had a lengthy and extensive criminal history and suffered convictions for sex offenses, which required him to register pursuant to section 290 upon his release from state prison. (*Id*. at pp. 531-532.) Upon release, the defendant failed to register with local law enforcement. (*Id*. at p. 532.) He was arrested during a parole sweep and was charged with failing to register as a sex offender upon arriving in a jurisdiction and with failing to annually update his registration within five working days of his birthday. (*Id*. at pp. 532-533.)

The People presented evidence that the defendant never registered as a sex offender upon his release on parole and, at the time of his arrest, he told police he never intended to register and wanted to stay away from law enforcement altogether. (*Coley*, *supra*, 55 Cal.4th at pp. 533-534.) The defendant testified he did register upon his release from prison, but that he did not know he was required to annually update his registration. (*Id*. at p. 534.) A jury acquitted the defendant of failing to register upon his release from state prison, but found him guilty of failing to update his registration within five working days of his birthday. (*Id*. at p. 535.) The defendant admitted to suffering three prior serious or violent felony convictions and requested that the trial court strike at least two of them in the interest of justice. He contended a sentence of 25 years to life for his current conviction would constitute cruel and unusual punishment. (*Id*. at p. 535.) In denying the request to strike the prior convictions, the trial court stated it disbelieved the defendant's testimony that he did, in fact, register upon release from state prison. (*Id*. at

13

pp. 535-536.)  The court then sentenced the defendant to 25 years to life under the three strikes law.  (*Id*. at p. 536.)

In *Coley*, our Supreme Court noted four appellate courts had already addressed the same Eighth Amendment issue in the context of a sentence of 25 years to life for a SORA violation, and reached opposite conclusions.  Two courts–*People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony II*) and *Gonzalez v. Duncan* (9th Cir. 2008) 551 F.3d 875 (*Gonzalez*)—concluded a sentence of 25 years to life violated the Eighth Amendment where the SORA violation was a passive, nonviolent, and regulatory violation, where the defendant did not evade law enforcement, and where law enforcement knew all along of the defendant's whereabouts because he had regularly registered and still lived at the same address.  (*Coley*, *supra*, 55 Cal.4th at pp. 544-550.)

In contrast, two courts—*People v. Nichols* (2009) 176 Cal.App.4th 428 (*Nichols*) and *Crosby v. Schwartz* (9th Cir. 2012) 678 F.3d 784 (*Crosby*)—held a sentence of 25 years to life did not violate the Eighth Amendment when the SORA violation was not merely technical and resulted in law enforcement not knowing the defendant's current whereabouts, thereby frustrating the purpose of SORA.  (*Coley*, *supra*, 55 Cal.4th at pp. 550-551.)  Rather than choose one line of authority over the other, our Supreme Court in *Coley* held the case before it was governed by the latter line and found no Eighth Amendment violation.  (*Id*. at pp. 551-552, 561-562.)

14

Defendant contends his case is governed by *Carmony II* and *Gonzalez* because his failure to "deregister" in Moreno Valley was a passive, technical violation. According to defendant, he misunderstood his obligation under section 290.013, subdivision (a), and his failure to comply with its dictates was not the result of a deliberate intent to evade law enforcement. True, unlike in *Nichols*, *Crosby*, and *Coley*, the People introduced no evidence defendant was actively avoiding law enforcement or that he intended to not inform MVPD of his move to Rialto. However, the holdings in those cases were not based solely on a defendant's active evasion of law enforcement. The courts were careful to note the violations resulted in law enforcement being unaware of the defendants' current whereabouts, which frustrated the purpose of SORA. (*Nichols*, *supra*, 176 Cal.App.4th at p. 437 ["defendant's failure to register thwarted the fundamental purpose of the registration law, thereby leaving the public at risk"]; *Crosby*, *supra*, 678 F.3d at p. 794 ["[defendant] was no longer living at his last registered address at the time of his arrest, and his failure to register impeded the police's ability to find him for surveillance"].)

As the court in *Crosby* noted, "In *Gonzalez*, we concluded that a conviction for failure to register after an address change is directly related to the state's interest in ensuring that it knows the whereabouts of its sex offenders. [Citation.] This distinction puts the conviction here [under former section 290, subdivision (f), now section 290.013, subdivision (a)] in stark contrast to the mere technical violation for failure to annually register. [Citation.] [¶] The California Court of Appeals has also held that this distinction is crucial." (*Crosby*, *supra*, 678 F.3d at p. 793.) The courts in *Carmony II* and *Gonzalez* concluded failure to annually register was technical and harmless because

15

the defendants there made good faith efforts to regularly register and to keep their registration information updated, *and because the violations did not result in law enforcement being unaware of the defendants' whereabouts.* (*Carmony II*, *supra*, 127 Cal.App.4th at p. 1079; *Gonzalez*, *supra*, 551 F.3d at pp. 884-885.)

Here, there can be no dispute defendant's failure to timely inform the MVPD of his move to Rialto frustrated the purpose of SORA. Sergeant Reinbolz testified that, although defendant registered with the MVPD in 2008 and properly renewed his registration in 2009, the MVPD had no record of defendant informing it of his move to Rialto, timely or otherwise. Reinbolz also testified the MVPD's records would lead him to believe defendant still lived on David Lane in Moreno Valley. Investigator Casey testified that, based on what the MVPD's records showed as of mid-May 2010, she traveled to the David Lane address to see if defendant still resided there. When Casey was unable to locate defendant at the David Lane residence, she referred the case for future investigation.

As part of his follow-up investigation, Investigator Cadwell reviewed the Megan's Law Web site, the DOJ sex offender database, and the last form 8102 about defendant in the MVPD's records, and confirmed defendant's last registered address was on David Lane in Moreno Valley. Cadwell could not tell from these sources whether defendant "deregistered" his David Lane residence. When Cadwell visited the David Lane address on June 8, 2010, he spoke to the current resident of that address and to the apartment manager, which lead Cadwell to believe defendant had moved to an address within the jurisdiction of another law enforcement agency. The People introduced evidence that

16

defendant moved from his David Lane apartment in April 2010, and that in May 2010 he spoke to the manager of his old apartment building and told her he was living in Rialto at the time. Finally, Detective McCullough testified she spoke to defendant at the Rialto Police station on June 17, 2010, and during the interview defendant admitted he did not timely register upon moving back to Rialto and he did not "register out" of Moreno Valley upon moving.

For almost three months defendant's then-current residence in Rialto was unknown to law enforcement in Moreno Valley and Rialto, and at least two investigators were unable to find him using the information he provided the last time he registered. Given the "crucial" distinction between defendant's violation and a mere technical violation of failure to annually register (*Crosby*, *supra*, 678 F.3d at p. 793), we conclude defendant's case is governed by the decisions in *Coley*, *Nichols*, and *Crosby*. Defendant does not dispute the extent and severity of his criminal history, including but not limited to the four serious and violent strike priors he admitted. In light of defendant's serious criminal history and the seriousness of his current offense, we conclude the sentence of 25 years to life is not disproportionate. Therefore, we need not engage in inter- or intra-jurisdictional comparison. (*Coley*, *supra*, 55 Cal.4th at p. 542.)

2.

Decisions Prohibiting De Facto LWOP Sentences As a Violation of the Eighth
Amendment Apply Solely to Defendants Who Were Juveniles At the Time of
Their Crimes, and Do Not Apply to Defendant

In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) and *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*), the United States Supreme Court held a mandatory sentence of life without the possibility of parole or its functional equivalent, for homicide and nonhomicide crimes, constitutes cruel and unusual punishment when imposed on a defendant who was a juvenile at the time of the crime. (See *People v. Caballero* (2012) 55 Cal.4th 262, 266-268 (*Caballero*).) Applying those cases, our Supreme Court held the Eighth Amendment also prohibits sentencing a defendant who was a juvenile at the time of the nonhomicide crime to a term of imprisonment with a parole eligibility date that falls outside his or her natural life expectancy. (*Id*. at p. 268.) In each of those decisions, the courts relied on the facts that a juvenile's brain is not yet fully developed and, therefore, juveniles are more capable of changing than adult offenders. (*Id*. at p. 266-268 & fn. 4.) Sentencing a juvenile offender to prison for what amounts to a life sentence will unconstitutionally deprive the offender of the chance to obtain parole by demonstrating growth and maturity. (*Id*. at p. 266.)

18

Defendant does not discuss the United States Supreme Court cases in *Graham* and *Miller*, and he only briefly discusses *Caballero* in the context of defining what life expectancy means and how to determine whether a sentence for a term of years constitutes a de facto LWOP sentence. Because those cases and their progeny apply solely to juvenile offenders, and defendant cites no decisional authority whatsoever for applying the de facto LWOP cases to a defendant who was 57 years old when he committed his crime, we find no Eighth Amendment violation. (See *United States v. Marshall* (6th Cir. 2013) 736 F.3d 492, 497-500 [holding *Miller* did not apply to a defendant who was between the ages of 18 and 20 when he committed his crime]; *United States v. Farley* (11th Cir. 2010) 607 F.3d 1294, 1342, fn. 34 [noting *Graham* did not apply to a defendant who was in his late 30s when he committed his crime].)[5]

3.

<u>The Trial Court Did Not Abuse Its Discretion by Denying Defendant's *Romero*</u>

<u>Motion to Avoid an Unconstitutional Sentence of 25 Years to Life</u>

Finally, defendant contends the trial court abused its discretion by denying his request to strike his prior serious and violent felonies pursuant to *Romero*. Defendant's sole argument on appeal for reversal is that a sentence of 25 years to life for his conviction under section 290.013, subdivision (a), was a de facto LWOP sentence and was disproportionate to his crime, and the trial court should have stricken the priors to

---

[5] The life expectancy table, of which defendant requests we take judicial notice, is therefore not relevant to determining the merits of this appeal, so the request is denied. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1326.)

19

avoid imposing an unconstitutional sentence. He presents no other basis for finding the trial court abused its discretion. Because we conclude defendant's sentence of 25 years to life is proportional to the severity of his crime, and does not constitute a prohibited de facto LWOP sentence, we find the trial court did not abuse its discretion by denying defendant's *Romero* request.

B.

THE TRIAL COURT AWARDED DEFENDANT AN INCORRECT AMOUNT OF CREDIT FOR TIME SPENT IN PRESENTENCE CUSTODY AND AN INCORRECT AMOUNT OF CONDUCT CREDIT UNDER SECTION 4019

The trial court awarded defendant credit for 549 days spent in presentence custody, and 548 days of conduct credit under section 4019, for a total of 1,097 days of credit toward his sentence. Defendant contends the trial court did not award him the correct amount of credits because it allegedly used an incorrect arrest date. Using a much earlier arrest date, and the appropriate version of section 4019, defendant argues he is entitled to credit for 947 days in presentence custody and 472 days of conduct credit, for a total of 1,419 days. The People contend defendant is not entitled to an additional award of credits. Instead, using the same arrest date as the trial court, and applying the same correct version of section 4019 as defendant, the People contend defendant is entitled to 551 days for time spent in presentence credit and to 274 days of conduct credit, for a total of 825 days.

20

Defendant contends the record demonstrates he was arrested in this case on June 17, 2010, and not on July 18, 2011, as the People contend. But the portions of the record defendant cites do not support his conclusion. The probation report indicates defendant was arrested by the Rialto Police Department on June 17, 2010, and booked for felony indecent exposure and for failing to update his sex offender registration. This corresponds with Detective McCullough's testimony that defendant was interviewed at the Rialto Police station on June 17, 2010, and admitted he did not timely register upon moving back to Rialto. But all this shows is defendant was arrested on June 17, 2010, for crimes allegedly committed in San Bernardino County. This is borne out by the notation in the probation report that, at the time of his sentencing in this case, defendant had charges pending in San Bernardino County for felony indecent exposure and for failure to register in violation of section 290, subdivision (b). Defendant is not entitled to credit in this case for time he spent in custody on the San Bernardino charges. (§ 2900.5, subd. (b).)

The probation report clearly indicates a declaration in support of an arrest warrant was sworn out in Riverside County on July 28, 2010, but defendant was not arrested in this case until July 18, 2011, probably because he was in custody in San Bernardino. This corresponds with defendant's in-custody arraignment on July 20, 2011. Defendant's appointed trial counsel relied on the July 18, 2011, arrest date during sentencing because she agreed with the trial court's credit calculation.

Applying the correct arrest date of July 18, 2011, and the sentencing date of January 18, 2013, we conclude defendant is entitled to 550 days of credit for actual time spent in presentence custody.  The trial court's figure of 549 days is likely the result of failing to include the extra day in February 2012 for leap year, of which we take judicial notice.  (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

The parties agree that, because defendant's offense occurred on June 7, 2010, his award of conduct credits is governed by the former version of section 4019 which went into effect on January 25, 2010, and not by the more generous formula applied by the trial court.  We agree.  (Former § 4019, as amended by Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50; *People v. Verba* (2012) 210 Cal.App.4th 991, 993-994.)  Under that version of former section 4019, a defendant was entitled to two days credit for every four days spent in presentence custody.  (Former § 4019, subds. (b), (c); *People v. Brown* (2012) 54 Cal.4th 314, 318 (*Brown*).)  A limitation on this formula for prisoners required to register as sex offenders under section 290 was subsequently deleted (*Brown*, at pp. 318-319, fn. 5), and the People concede defendant is entitled to two days of credit for every four days he spent in presentence custody.  Applying this correct formula, defendant is entitled to 274 days of conduct credit ($550 \div 4 = 137.5$; $137 \times 2 = 274$).  Therefore, defendant is entitled to a total credit award of 824 days ($550 + 274 = 824$).

## III.

## DISPOSITION

The trial court is directed to make an amended award of 550 days of credit for time spent in presentence custody and 274 days of conduct credit under former section 4019, for a total award of 824 days.

The clerk of the superior court shall prepare an amended minute order of sentencing and abstract of judgment, and shall forward them to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER  
Acting P. J.

We concur:


KING  
J.


MILLER  
J.

23