Filed 3/1/22  P. v. Williams CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RODNEY CHE WILLIAMS,<br><br>　　　Defendant and Appellant. | H047800<br>(Santa Clara County<br>Super. Ct. No. C1121004 ) |

In 2012, defendant Rodney Che Williams pleaded no contest to failure to register as a sex offender, felony possession of marijuana for sale, being a felon in possession of ammunition, and three counts of being a felon in possession of a firearm.  He also admitted that he had suffered two prior strike convictions.  The trial court denied defendant's request to strike one of his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and sentenced him to 25 years to life in prison.  This court affirmed in case No. H039393.

In 2018, defendant sought to have his felony possession of marijuana for sale conviction redesignated as a misdemeanor pursuant to Proposition 64 and requested resentencing.  The trial court granted the petition, redesignated the conviction as a misdemeanor, and permitted defendant to file a *Romero* motion in connection with his resentencing.  The court denied that motion and sentenced defendant to a term of 25 years to life.  On appeal, defendant argues that the trial court abused its discretion by denying

his *Romero* motion and that his sentence violates the state constitutional prohibition on cruel or unusual punishment.  We shall affirm.

## I.     FACTUAL BACKGROUND

### A.     *Defendant's Strike Convictions*

In June 1990, defendant and two friends repeatedly raped a 14-year-old girl. Defendant was 18 years old at the time and raped the victim twice.  A jury convicted defendant of two counts of rape and the trial court imposed a seven-year state prison sentence.

### B.     *Subsequent Criminal Activity*

In February 1991, defendant—while out on bail in the rape case—committed felony violations of Health & Safety Code sections 11351.5 (possession for sale of cocaine base) and 11352, subdivision (a) (transportation of cocaine).  He pleaded guilty to those offenses and was sentenced to three years four months in state prison consecutive to the seven-year sentence for the rapes.

Defendant was paroled on October 1, 1996.

Approximately one year later, on October 9, 1997, defendant was arrested for failure to register as a sex offender (Pen. Code, § 290, subd. (g)(2)).[1]  He pleaded guilty and was sentenced to 32 months in state prison.

Defendant was paroled on September 14, 1999.

Approximately one year later, on September 27, 2000, defendant violated parole. The facts of that violation are unknown.

Defendant was paroled on February 21, 2001.  He was successfully discharged from parole approximately 22 months later, on December 13, 2002.

Five months after that, on May 13, 2003, defendant was arrested following an incident during which an officer, who was investigating defendant's compliance with his

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

sex offender registration requirement, suffered an injury while chasing defendant. Defendant pleaded no contest to resisting a peace officer and proximately causing great bodily injury (§ 148.10, subd. (a)). That conviction was reversed on appeal and, on remand, defendant pleaded to being an accessory after the fact (§ 32) and the trial court imposed a 32-month sentence.

The record does not indicate when defendant was released from custody. On May 17, 2006, defendant was charged with felony possession of methamphetamine and misdemeanor resisting arrest. He pleaded to those charges and was sentenced to 32 months in state prison. Defendant successfully discharged from parole in May 2011 without violations.

### C.    Current Offenses

In 2011, defendant stated on numerous sex offender registration forms that he was transient and had no job or vehicle. A San Jose police investigation determined that defendant had lived at a San Jose residence for at least two years, held two jobs, and had a vehicle. On December 1, 2011, police arrested defendant and searched his residence pursuant to a search warrant. Officers found three loaded guns and 13 pounds of marijuana in defendant's residence. At the time of his arrest, defendant told officers that he did not register his address because he had "side girlfriends" and he did not want them to be able to locate each other.

## II.    PROCEDURAL HISTORY[2]

Defendant was charged with failure to register as a sex offender (§ 290.011, subd. (b); count 1), possession of marijuana for sale (Health & Saf. Code, § 11359; count 2), three counts of possession of a firearm by a felon (former § 12021, subd. (a)(1); counts 3-5), and possession of ammunition by a felon (former § 12316, subd. (b);

---

[2] We take portions of the procedural history from this court's opinion in the prior appeal, case No. H039393.

3

count 6). The charging document also included allegations that defendant had suffered two prior strike convictions (§§ 667, subds. (b)-(i),1170.12) and had served five prior prison terms (§ 667.5, subd. (b)). Defendant pleaded no contest to the charges and admitted the allegations.

Defendant filed a *Romero* motion, seeking to strike one or both of the strike priors. The trial court denied that motion and sentenced defendant to concurrent terms of 25 years to life on each count for an aggregate sentence of 25 years to life. The trial court struck punishment for the five prison priors. In a prior appeal, a panel of this court affirmed the judgment.

In December 2018, defendant filed a petition seeking to have his conviction for possession of marijuana for sale reduced from a felony to a misdemeanor pursuant to Health and Safety Code section 11361.8.[3] The trial court granted that petition in January 2019 and continued the case for resentencing.

In connection with resentencing, defendant moved to have one of his strike priors stricken pursuant to *Romero* and section 1385. In support of that request, defendant emphasized the changes he had made since his initial sentencing in 2012. Specifically, he submitted evidence that he had participated in self-help and educational programming including a 10-week nonviolence workshop, a Criminal and Gang Members Anonymous 12-Step program, a 28-week Restorative Justice Roundtable, and a 52-week GRIP

---

[3] "On November 8, 2016, voters passed the Control, Regulate and Tax Adult Use of Marijuana Act, more commonly known as Proposition 64. Proposition 64 legalized the recreational use of marijuana and reduced the criminal penalties for various marijuana-related offenses, including the . . . possession for sale of marijuana." (*People v. Boatwright* (2019) 36 Cal.App.5th 848, 853.) Health and Safety Code section 11361.8 was added by Proposition 64 and "establishes a postjudgment procedure for the filing of a petition for recall or dismissal of sentence when '[a] person currently serving a sentence for a conviction . . . would not have been guilty of an offense, or . . . would have been guilty of a lesser offense under the Control, Regulate and Tax Adult Use of Marijuana Act had that act been in effect at the time of the offense.' [Citations.]" (*People v. Taylor* (2021) 60 Cal.App.5th 115, 120, fn. omitted.)

(Guiding Rage Into Power) Comprehensive Offender Accountability Program. He also showed that he had given money and hygiene products to Bay Area homeless children, donated his original paintings to an annual benefit auction and to the University of Derby in England, served as a peacemaker during San Quentin's Day of Peace event, completed college coursework, and participated in a Christian Fellowship. Finally, defendant showed that he had developed a plan should he be paroled, which included an offer of full-time employment at a construction company and a place to live with his fiancé and their daughter.

The trial court denied the *Romero* motion on January 15, 2020. The court concluded that defendant did not fall outside the spirit of the "Three Strikes" law, reasoning that while defendant's strike priors were remote in time and his work since 2012 was "very impress[ive]," he had demonstrated an "inability to stay crime free" and had repeatedly failed to comply with his sex offender registration obligations. Two days later, the court imposed sentence as follows: 25 years to life on count 1, a concurrent county jail sentence of six months on count 2, and concurrent terms of 25 years to life on counts 3 through 6 for an aggregate term of 25 years to life.

Defendant timely appealed.

## III. DISCUSSION

Defendant argues the trial court abused its discretion in denying his *Romero* motion. Alternatively, he contends his 25-years-to-life sentence violates California's constitutional prohibition on cruel or unusual punishment.

### A. Romero *Motion*

#### 1. *Legal Principles and Standard of Review*

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice." (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.) In deciding whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony

convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review the denial of a *Romero* motion for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "[T]he law creates a strong presumption that any sentence that conforms to [the Three Strikes law] is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. . . . [¶] . . . '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Rather, it must be the case that "no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme . . . ." (*Ibid.*) Only "in such an extraordinary case—where . . . no reasonable minds could differ—[does] the failure to strike . . . constitute an abuse of discretion." (*Ibid.*)

### 2. Analysis

On appeal, defendant argues that the trial court abused its discretion when it denied his *Romero* motion. For that position, he notes that none of his current convictions is for a serious or violent offense, his strike offenses occurred more than 20 years before his current offenses, he was just 18 years old at the time he committed the strike offenses, he is now middle-aged, and his current felony convictions stem from his status as a convicted sex offender and felon.

Defendant rightly points out that certain factors weighed in favor of striking a prior strike conviction. But other factors weighed against doing so, including defendant's failure to refrain from criminal activity when he was out of custody and his repeated noncompliance with his sex offender registration obligations. The record demonstrates that the trial court " 'balanced the relevant facts and reached an impartial decision in

6

conformity with the spirit of the law' " when it denied the *Romero* motion. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) Accordingly, even if " 'reasonable people might disagree' " with the court's decision, and indeed even " 'if we might have ruled differently in the first instance,' " we can find no abuse of discretion. (*Ibid*.)

*People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*), on which defendant relies heavily, does not convince us otherwise. There, the Court of Appeal reversed the denial of a *Romero* motion where the trial court had abused its discretion by failing to consider relevant factors, including the remoteness of the prior strikes, defendant's youth at the time he committed them, and the defendant's drug addiction (which the Court of Appeal deemed mitigating). (*Avila*, at pp. 1141-1144.) Here, the trial court properly considered all relevant factors. Moreover, the trial court in *Avila* had erroneously characterized the current offenses as violent and had engaged in improper speculation "about what might have happened had the police not been called." (*Id*. at p. 1142.) No similar errors were committed here.

### B.     Cruel or Unusual Punishment

Article I, section 17, of the California Constitution prohibits "cruel or unusual punishment." Defendant argues his 25-years-to-life sentence violates that prohibition. Defendant's trial counsel did not object that the sentence was unconstitutionally cruel or unusual. However, in an effort to forestall a future claim of ineffective assistance, the Attorney General does not argue forfeiture, instead addressing the merits of this claim. We exercise our discretion to decide the issue on its merits. (See *Avila*, *supra*, 57 Cal.App.5th at p. 1145.) "[W]hile considering in the light most favorable to the judgment any underlying disputed facts," we review the claim de novo. (*People v. Edwards* (2019) 34 Cal.App.5th 183, 190.)

Our "inquiry properly focuses on whether the punishment is 'grossly disproportionate' to the offense and the offender or, stated another way, whether the punishment is so excessive that it ' "shocks the conscience and offends fundamental

notions of human dignity." ' " (*In re Palmer* (2021) 10 Cal.5th 959, 972.) In determining whether a sentence is cruel or unusual, California courts use three "analytical techniques . . . : (1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Id.* at p. 973.) Defendant focuses on the first technique, emphasizing many of the factors he argues in connection with his *Romero* motion.

Defendant's current felony offenses are failure to register as a sex offender within five working days after moving, three counts of possession of a firearm by a felon, and possession of ammunition by a felon. California courts have held that, under certain circumstances, a three-strikes sentence for failure to comply with sex offender registration laws *alone* is not cruel or unusual punishment under the California Constitution. For example, in *People v. Meeks* (2004) 123 Cal.App.4th 695 (*Meeks*), our colleagues in the Third District concluded that a sentence of 25 years to life for the defendant's failure to register within five days after changing his address did not violate the state constitution where the defendant exhibited a "willingness to ignore his duty to register and thus ignore society's right to maintain some control over sexual offenders . . . ." (*Id.* at p. 709.) In that case, the evidence showed that defendant had intentionally failed to register because he had other " 'priorities.' " (*Id.* at p. 701.)

In *People v. Nichols* (2009) 176 Cal.App.4th 428 (*Nichols*), the Court of Appeal held that a 25-years-to-life sentence under the Three Strikes law for the defendant's failure to register within five days after changing his address did not violate the state constitution's prohibition against cruel or unusual punishment. In that case, there was evidence that the defendant was aware of his registration responsibilities but moved out of his home and "drifted around the country" for eight months without filing the proper registration paperwork. (*Id.* at p. 433.) In finding no constitutional violation, the

8

appellate court reasoned that the defendant's "blatant disregard of the registration act and complete undercutting of the act's purposes" were "a serious offense." (*Id.* at p. 437.)

By contrast, in *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony*), the appellate court held that a third-strike sentence for failing to register within five days of the defendant's birthday constituted cruel or unusual punishment in violation of the California Constitution. There, the defendant had registered as a sex offender on September 16, 1999 (upon his release from prison) and again one week later (after moving to a new residence), but had failed to register within five working days of his birthday one month later. (*Id.* at p. 1073.) Despite that failure, law enforcement authorities had his correct address and other information from his September 1999 registration. (*Id.* at p. 1082, fn. 11.) Given those circumstances, the Court of Appeal characterized "[d]efendant's offense . . . [as] a harmless violation of a regulatory requirement." (*Id.* at p. 1087.)

Turning to the case at hand, the circumstances of defendant's noncompliance with the sex offender registration laws are more analogous to those in *Nichols* and *Meeks* than to those in *Carmony*. Defendant intentionally lied on his registration forms, falsely reporting he was a transient and had no vehicle or job. In doing so, defendant—like the defendants in *Nichols* and *Meeks*—"thwarted the fundamental purpose of the registration law, thereby leaving the public at risk." (*Nichols*, *supra*, 176 Cal.App.4th at p. 437.) Those cases support the conclusion that defendant's sentence of 25 years to life is not cruel or unusual.

Of course, failure to register as a sex offender is not defendant's only current conviction. He also was convicted of three counts of possession of a firearm by a felon and possession of ammunition by a felon. "[T]he California Legislature views the possession of a handgun by an ex-felon to be a serious offense. The intent underlying [former] section 12021, subdivision (a) was to limit the use of instruments commonly associated with criminal activity and to minimize the danger to public safety arising from

9

the free access to firearms that can be used for crimes of violence. [Citation.] The law properly presumes the danger is greater when the person possessing the firearm has previously been convicted of felony. [Citation.]" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 824 [25 years to life for a recidivist whose current conviction is for being a felon in possession of a firearm held not to violate the California Constitution].) Thus, like defendant's conviction for failure to register, his other current convictions are for crimes that our Legislature has determined pose a danger to public safety. In short, his triggering offenses are not as benign as he would have us conclude.

Finally, "defendant is not subject to a lengthy sentence ' " 'merely on the basis of his current offense[s] but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses.' " ' [Citations.] . . . [F]or purposes of California's cruel or unusual punishment analysis, the first consideration is 'the nature of the offense and offender' with emphasis on his danger to society. [Citation.]" (*People v. Brewer* (2021) 65 Cal.App.5th 199, 218-219.) Moreover, defendant's deliberate failure to properly register as a sex offender "even though he knew he had an obligation to do so, . . . demonstrated that, notwithstanding the significant punishment that he had incurred as a result of his prior serious and violent felony convictions, [he] was still intentionally unwilling to comply with important legal requirements prescribed by the state's criminal laws. As a consequence, [defendant's] current criminal conduct and conviction clearly bore a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law." (*In re Coley* (2012) 55 Cal.4th 524, 561-562.) For all the foregoing reasons, we conclude defendant's sentence does not constitute cruel or unusual punishment in violation of the state constitution.

## IV. DISPOSITION

The judgment is affirmed.

_____
ELIA, ACTING P.J.

WE CONCUR:

_____
BAMATTRE-MANOUKIAN, J.

_____
WILSON, J.

*People v. Williams*
H047800

11